IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEAJA BRADLEY<br>134 Route 45<br>Mannington, NJ 08098<br><br>   Plaintiff,<br><br>v.<br><br>PROSPECTIVE HOMES, LLC<br>d/b/a Ann's Abbey Group Home<br>123 North Main Street<br>Woodstown, NJ 08098<br>   and<br>PROBYN ALLEN<br>c/o PROSPECTIVE HOMES, LLC<br>123 North Main Street<br>Woodstown, NJ 08098<br>   and<br>MAMIE ALLEN<br>c/o PROSPECTIVE HOMES, LLC<br>123 North Main Street<br>Woodstown, NJ 08098<br><br>   Defendants. | CIVIL ACTION<br><br>DOCKET NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Deaja Bradley (*hereinafter* "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. Plaintiff has initiated the instant action to redress violations by Prospective Homes, LLC, Probyn Allen, and Mamie Allen (*hereinafter* collectively referred to as "Defendants" unless specified otherwise) of the New Jersey Wage Payment Law ("WPL" - N.J.S.A. 34:11-4.1 *et seq.*), the New Jersey Wage & Hour Law ("WHL" - N.J.S.A. 34:11-56a *et seq.*), the New Jersey Conscientious Employee Protection Act ("CEPA"), and the Fair Labor

Standards Act ("FLSA - 29 U.S.C. § 201 *et. seq.*). Plaintiff asserts, *inter alia*, that she was not properly compensated for all hours worked while in the employ of Defendants and thereafter was unlawfully terminated by Defendants.

## JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under the laws of the United States and seeks redress for violations of the FLSA. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendants all reside within the District of New Jersey for the purposes of this action.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the above-caption.

7. Defendant Prospective Homes, LLC, doing business as Ann's Abbey Group Home, is a business entity organized under the laws of New Jersey which owns and operates a residential care facility for the elderly, located at the address as set forth in the above-caption (the location at which Plaintiff worked).

8. Defendant Probyn Allen is an adult individual who, upon information and belief, was, at times relevant to this action, an owner/operator and the managing member of Defendant Prospective Homes, LLC. Defendant Probyn Allen controls and manages the terms and conditions of employment for employees (including Plaintiff), including but not limited to hiring, firing, issuing discipline, compensation, and creating/implementing policies (including pay policies).

9. Defendant Mamie Allen is an adult individual who, upon information and belief, was, at times relevant to this action, an owner/operator and member of Defendant Prospective Homes, LLC; who, along with Defendant Probyn Allen, controls and manages the terms and conditions of employment for employees (including Plaintiff), including but not limited to hiring, firing, issuing discipline, compensation, and creating/implementing policies (including pay policies).

10. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

11. Plaintiff was, at all times relevant, an "employee" of Defendants under the Fair Labor Standards Act, the New Jersey Wage Payment Law(s), and the New Jersey Wage and Hour Law(s).

12. Defendants were, at all times relevant, "employer(s)" of Plaintiff under the Fair Labor Standards Act, the New Jersey Wage Payment Law(s), and the New Jersey Wage and Hour Law(s), as defined by said laws.[1]

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. In or about September of 2014, Plaintiff was hired and began work for Defendants.

15. During her employment with Defendants, Plaintiff performed caregiving, cleaning, and related duties for residents at Defendants' residential care facility, located at 123 North Main Street, Woodstown, NJ 08098.

16. Plaintiff was hired by Defendants as an hourly employee at a rate of approximately $8.38 per hour.

17. Throughout her employment with Defendants, Plaintiff was a dedicated and hardworking employee who performed her job well.

18. In or about December of 2014, Defendants changed Plaintiff from an hourly to a salary employee, at a salary of $19,500 (i.e. $375 per week).

19. At a salary of $19,500 (or $375 per week), Plaintiff could not qualify as an exempt employee under either Federal or State wage law[2]; thus, Plaintiff was always a non-

---

[1] The FLSA applies to Defendants as they are a residential care facility for the elderly. *See* 29 U.S.C.A. § 203 (s)(1) (emphasis added) ("Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that…(B) is engaged in the operation of a hospital, **an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution**, a school for mentally or physically handicapped or gifted children, a preschool, elementary or secondary school, or an institution of higher education (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit)").

exempt employee under Federal and State wage law and was due overtime wages at 1 and ½ her normal hourly rate for any hours worked above forty (40) in a workweek.

20. From in or about July of 2015 through in or about April of 2016, Plaintiff often worked in excess of forty (40) hours per week for Defendants, sometimes as much as 98 hours in one week.

21. Despite often working in excess of forty hours per week (discussed *supra*), Plaintiff was not paid the proper overtime rates and/or proper minimum wage rates for hours she actually worked.

22. In or about March of 2016, Plaintiff filed a wage claim against Defendants with the New Jersey Department of Labor, Division of Wage & Hour Compliance (*hereinafter* "NJ DOL"), asserting that Defendants failed to pay her proper wages, overtime, and holiday/vacation pay.

23. After receiving Plaintiff's complaint (discussed *supra*), the NJ DOL notified Defendants of Plaintiff's complaint and conducted an investigation into Defendants' illegal payroll practices concerning Plaintiff and other employee(s).

24. On or about August 9, 2016, as result of investigation prompted by Plaintiff's complaint (discussed *supra*), the NJ DOL notified Defendants that the NJ DOL determined Defendants were in violation of New Jersey Wage and Hour Law, (N.J.S.A. 34:11-56a et seq.); the NJ DOL assessed penalties against Defendants for violations regarding minimum wage, overtime, and incomplete records.

---

[2] At times relevant to this action, to qualify as an exempt executive, administrative or professional employee required, *inter alia*, a salary of at least $455 per week. *See* 29 CFR 541.600.

25. As result of Defendants' wage and hour violations (discussed *supra*), the NJ DOL assessed that Defendants owed Plaintiff approximately $9,017.90 for wages that Defendants had improperly not paid Plaintiff during her employment.

26. On or about September 15, 2016, a conference was held at the NJ DOL with Defendant Probyn Allen to address the NJ DOL's findings (discussed *supra*).

27. On or about September 15, 2016, pursuant to the conference at the NJ DOL (discussed *supra*), Defendants agreed with the NJ DOL to pay the assessed wages due to Plaintiff in monthly installments, from October 2016 through June of 2017 (payments due to the NJ DOL by the 15th of the month).

28. After the NJ DOL found Defendants in violation with respect to Plaintiff (discussed *supra*), Plaintiff began to be subjected to increased hostility from Defendants at work, which consisted of Defendants' management treating Plaintiff coldly and sarcastically (despite Plaintiff's history of being a very hard-working and dedicated employee); upon information and belief, Defendants also began improperly withholding money from Plaintiff's paycheck until the time of her termination (discussed further *infra*).

29. On or about December 4, 2016, Defendants terminated Plaintiff's employment for purported job abandonment; which was **complete** pretext for retaliation against Plaintiff due to her aforementioned complaints regarding Defendants' overtime/wage violations, as:

   a. Plaintiff did not "abandon" her job, but rather had worked for Defendants the night prior and Plaintiff's co-worker (Sally) advised her she would cover Plaintiff's shift the night of December 4th;

b. Plaintiff's co-workers (who had not filed a wage/overtime complaint) often switched schedules with each other, and sometimes even failed to show up for shifts without being terminated;

c. Defendants had expressed growing animosity towards Plaintiff about her complaint with the NJ DOL and the resulting payments Defendants were instructed to pay to Plaintiff;

d. Defendants' failed to abide by the agreement made with the NJ DOL to compensate Plaintiff for wages improperly not paid to her:

    i. Defendants' 1st installment, due to the NJ DOL by October 15th, 2016, was not received by the NJ DOL until October 25, 2016;

    ii. Defendants' 2nd installment, when disbursed to Plaintiff (in or about late November of 2016), was unable to be cashed due to insufficient funds in Defendants' checking account;

    iii. In or about early December of 2016, Plaintiff was threatened by Defendant Probyn Allen that no further funds would be paid to Plaintiff; and

    iv. Defendants failed to make the 3rd installment due to the NJ DOL by December 15, 2016, and have since failed to make *any* further installment payments assessed against them by the NJ DOL.[3]

e. In or about early January of 2017, Defendant Probyn Allen told Plaintiff that Defendants would pay her nothing further in regards to the NJ DOL

---

[3] In total, Defendants only made two out of the nine installments due to the NJ DOL for Plaintiff's wages.

assessment; Defendant Probyn Allen further stated that he was "going to make [Plaintiff] suffer."[4]

30. Upon information and belief, Defendants failed to pay the proper wages for hours Plaintiff actually worked, and thereafter terminated Plaintiff in clear retaliation for complaining of Defendants' illegal overtime and wage policies.

## Count I
## Violations of the Fair Labor Standards Act ("FLSA")
### (Failure to Pay Minimum Wage and Overtime)
### – Against All Defendants –

31. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32. Plaintiff often worked over 40 hours a week from in or about July of 2015 through in or about April of 2016.

33. During the relevant time period, Plaintiff was purportedly paid a salary of $19,500, but was not an exempt employee.

34. During the relevant time period, Plaintiff was never paid the proper overtime rates for any hours over forty (40) she worked per workweek (sometimes working as much as 98 hours in a workweek).

35. Upon information and belief, during the relevant time period, Plaintiff was also sometimes paid below the minimum wage rate for actual hours worked.

36. Plaintiff therefore seeks all remedies permitted under the FLSA for unpaid wages, as well as penalties and interest.

---

[4] Plaintiff was also informed by former coworkers that Defendant Probyn Allen expressed his intention to not pay Plaintiff anything further (of what the NJ DOL had assessed, described *supra*).

37. Defendant Individuals are personally liable because they were the owners and principal operators of Defendants who were responsible for the terms and conditions of Plaintiff's employment, including but not limited to her compensation. Defendant Individuals were also responsible for perpetuating unlawful payroll practices and ratifying same as it pertained to Plaintiff's compensation. Additionally, Defendant Individuals personally deceived Plaintiff regarding her compensation by purporting to make her a "salaried" (i.e. exempt) employee, yet Plaintiff was at all times a non-exempt employee.

## Count II
### Violations of the New Jersey Wage & Hour Law(s) and the NJ Wage Payment Law(s)
(Failure to Pay Minimum Wage, Overtime and Proper Wages)
- Against All Defendants –

38. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

39. Plaintiff reasserts each and every allegation under Count I, as such actions constitute Violations of the New Jersey Wage & Hour Law and the NJ Wage Payment Law in this instance.

40. Defendant Individuals are personally liable as owners of the Defendant Entity and because they personally instituted unlawful pay policies with the intent to deprive Plaintiff of her lawfully earned wages.

41. Plaintiff therefore seeks all remedies permitted under the New Jersey Wage & Hour Law and the NJ Wage Payment Law for unpaid wages, as well as penalties and interest.

## Count III
### Violations of the Conscientious Employee Protection Act ("CEPA")
(Wrongful Termination)
- Against All Defendants -

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. Plaintiff complained to a state agency (NJ DOL) of suspected unlawful wage/payment practices of Defendants.

44. Shortly after the NJ DOL found Defendants had, in fact, violated New Jersey Law with respect to Plaintiff, Plaintiff was terminated by Defendants for completely pretextual reasons.

45. Plaintiff therefore believes and avers she was terminated for reporting suspected unlawful activity to a state agency.

46. These actions as aforesaid constitute violations of CEPA.

### Count IV
### Violations of the Fair Labor Standards Act ("FLSA")
(Retaliation)
- Against All Defendants –

47. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48. Plaintiff complained of Defendants' illegal overtime practices to the NJ DOL, which was conveyed to Defendants.

49. Defendants were involved in proceedings with the NJ DOL with respect to Plaintiff's unpaid overtime.

50. Shortly after the NJ DOL found Defendants had, *inter alia*, failed to pay Plaintiff proper overtime, Plaintiff was terminated by Defendants for completely pretextual reasons.

51. Plaintiff therefore believes and avers she was terminated for filing a complaint and causing a proceeding to be initiated against Defendants for Defendants' failure to pay proper overtime.

52. These actions as aforesaid constitute violations of the FLSA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, liquidated, emotional distress and/or pain and suffering damages (where legally permitted);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable state law; and

G. Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____

Ari R. Karpf
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: March 13, 2017